NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0452n.06

No. 23-1125

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

LEVY MACHINING, LLC; ROBERT LEVY; )
SHERILENE LEVY; RYAN LEVY, )
            )
       Plaintiffs-Appellants, )
            )
v. )
            )
HANOVER TOWNSHIP, MICHIGAN; JEFF )
HEATH, )
            )
       Defendants-Appellees. )
            )

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: MOORE, READLER, and MURPHY, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge**.  Hanover Township sued Sherilene Levy, Mike Levy, and Levy Machining, LLC in state court to enforce Hanover Township's zoning ordinances.  The state court granted Hanover Township the relief it requested and ordered Levy Machining to relocate so that it complied with the zoning regulations.  Sherilene Levy, Robert Levy, Ryan Levy, and Levy Machining now sue Hanover Township and Jeff Heath in federal court based on alleged conflicts of interest and selective enforcement of the zoning ordinances.  The district court granted Hanover Township and Heath judgment on the pleadings based on claim preclusion.  We **AFFIRM** the district court.

## I. BACKGROUND

For sixteen years, Mike Levy[1] operated Levy Machining without any issue on a property in Hanover Township, Michigan, that was zoned Agriculture-1 ("AG-1"). R. 1 (Compl. ¶¶ 13–14) (Page ID #3). In April 2019, Jeff Heath was elected as the Hanover Township Supervisor. *Id.* ¶ 18 (Page ID #4). Heath owned the property adjacent to Levy Machining and had a tense interpersonal relationship with Mike Levy that had at times "devolved into face-to-face shouting matches" about "driveway use" and "illegal dumping." *Id.* ¶¶ 17, 25 (Page ID #4–5). Heath and his family also had connections to Lomar, a direct competitor of Levy Machining, and Lematic, a Levy Machining customer. *Id.* ¶¶ 26–30 (Page ID #5–6).

After Heath was elected Hanover Township Supervisor, he initiated zoning enforcement proceedings against Mike Levy, Sherilene Levy, and Levy Machining in Michigan state court (the "State-Court Action"). *Id.* ¶ 19 (Page ID #4). In the State-Court Action, Hanover Township alleged that Mike Levy, Sherilene Levy, and Levy Machining violated several ordinances because they operated a business in an AG-1 zone without permission from Hanover Township. *Id.* ¶ 24 (Page ID #5). Hanover Township moved for summary disposition of the State-Court Action. R. 19-5 (State Court Mot. Hr'g Tr. at 3:13–16) (Page ID #226). In response, Mike Levy, Sherilene Levy, and Levy Machining impliedly conceded that they had violated the ordinances, and instead argued several defenses. R. 19-3 (State Defs.' Opp'n at 5–7) (Page ID #141–43). First, they argued that Hanover Township's motion for summary disposition should be denied because

---

[1]Mike Levy is married to Sherilene Levy and together they have two sons, Robert and Ryan Levy. R. 19-3 (Opp'n to Mot. for Summ. Disp. at 2) (Page ID #138). Mike Levy owned Levy Machining until 2018 when he transferred ownership to his wife and two sons. *Id.* Mike Levy was a party in only the state-court proceedings. *Id.*

Hanover Township was "selectively enforcing its zoning ordinance" against Levy Machining in violation of their "equal protection rights." *Id.* Second, they argued that the Heath family's connections to Lomar and Lematic were conflicts of interest that should invalidate the Hanover Township board's vote to pursue litigation against Levy Machining. *Id.* at 7–8 (Page ID #143–44).

On June 4, 2020, after hearing arguments on the motion for summary disposition, the state court concluded that Mike Levy, Sherilene Levy, and Levy Machining violated each of the ordinances and that they "fail[ed] to state a valid defense that tests the legal sufficiency of" the claims. R. 19-5 (State Court Mot. Hr'g Tr. at 40–41) (Page ID #263–64). By granting Hanover Township's motion, the state court determined that "the defenses [were] so clearly untenable as a matter of law that no factual development could possibly deny [Hanover Township's] right to recover" relief. *Id.* Levy Machining was ordered to move and, as a result, incurred significant costs, such as moving costs, "sizeable rental obligation[s]," and several lost business contracts. R. 1 (Compl. ¶¶ 20–22) (Page ID #4).

On November 1, 2021, Sherilene Levy, Ryan Levy, Robert Levy, and Levy Machining filed suit against Hanover Township and Heath in federal court. *Id.* ¶¶ 1–8 (Page ID #2). The plaintiffs alleged eight counts: violation of their equal protection rights ("Count One"); violation of their substantive due process rights ("Count Two"); violation of their procedural due process rights ("Count Three"); conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985 ("Count Four"); tortious interference ("Count Five"); defamation ("Count Six"); intrusion upon seclusion ("Count Seven"); and civil conspiracy ("Count Eight"). *Id.* ¶¶ 31–87 (Page ID #6–16).

The plaintiffs' equal protection claim is based on a "class-of-one" selective enforcement theory of liability. *Id.* ¶ 33 (Page ID #6). To support this theory, the plaintiffs allege that there are twenty businesses similarly situated to Levy Machining that are operating in Hanover Township's AG-1 zones, but that these businesses have not been subject to zoning enforcement proceedings. *Id.* ¶¶ 23, 33 (Page ID #5–6). Instead, Hanover Township's decision to institute enforcement proceedings against Levy Machining was allegedly motivated by Heath's "vindictive grudge against the Levy family as a result of his prior conflicts with Mike Levy," *id.* ¶ 43 (Page ID #8), and Heath's "conflict of interest," which "interfered with" Hanover Township's zoning enforcement decisions, *id.* ¶¶ 50–51 (Page ID #9).

Hanover Township and Heath moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that the plaintiffs' claims were barred by res judicata because the plaintiffs had the opportunity to, and did, fully litigate the claims in the State-Court Action. R. 19 (Mot. for J. at ii) (Page ID #107). The district court found that Counts One, Two, Three, Four, Five, and Eight were barred by res judicata and declined to exercise supplemental jurisdiction over the remaining two state-law claims. R. 37 (Dist. Ct. Op. at 23–24) (Page ID #733–34).

## II. ANALYSIS

### A. Standard of Review

"We review de novo a grant of judgment on the pleadings" brought under Federal Rule of Civil Procedure 12(c), and "apply the same standard used to evaluate a motion to dismiss." *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020). We must construe the allegations in the complaint in the light most favorable to the plaintiff and determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although typically courts are limited to the pleadings when faced with a motion under Rule 12[(c)], a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

## B. Claim Preclusion

"Res judicata 'preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate.'" *Arangure v. Whitaker*, 911 F.3d 333, 337 (6th Cir. 2018) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). "In deciding whether res judicata . . . lend[s] preclusive effect to a particular state court decision, federal courts look to the state's law to 'assess the preclusive effect it would attach' to [a] decision." *Gutierrez v. Lynch*, 826 F.2d 1534, 1537 (6th Cir. 1987) (quoting *Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 557 (6th Cir. 1983)). Accordingly, in this case we will apply Michigan res judicata law.

Michigan courts have adopted a "broad view of res judicata," *In re MCI Telecomms. Compl.*, 596 N.W.2d 164, 183 (Mich. 1999), of which there are two types: issue preclusion and claim preclusion, *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion "forecloses 'successive litigation of the very same claim,'" while issue preclusion "bars 'successive litigation of an issue of fact or law.'" *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). "[T]he burden of proving the applicability of the doctrine of res judicata is on the party asserting it." *Baraga County v. State Tax Comm'n*, 645 N.W.2d 13, 16 (Mich. 2002). At issue here is claim preclusion, which "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could

have raised but did not." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). Michigan courts have adopted a three-part test such that claim preclusion "bars a second action on the same claim if '(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.'" *Mecosta Cnty. Med. Ctr. v. Metro. Grp. Prop. & Cas. Ins. Co.*, 983 N.W.2d 401, 405 (Mich. 2022) (quoting *Foster v. Foster*, 983 N.W.2d 373, 379 (Mich. 2022)).

### 1. Decision on the Merits

First, the district court properly found that the State-Court Action resulted in a decision on the merits. Typically, a state court's final judgment and permanent injunction constitute a merits decision for the purpose of claim preclusion. *AuSable River Trading Post, LLC v. Dovetail Sols., Inc.*, 874 F.3d 271, 274 (6th Cir. 2017); *Ludwig v. Township of Van Buren*, 682 F.3d 457, 459–60 (6th Cir. 2012). Despite this well-established law, the plaintiffs argue that the state-court judgment is not a final decision on the merits because the state court did not explicitly discuss the merits of their defenses. Appellant Br. at 14–15. The state court, however, was not required to do so under the first element of the claim-preclusion inquiry. *See AuSable River Trading Post*, 874 F.3d at 274 (finding that the Michigan state-court permanent injunction was a final merits decision, even though the claims "could have been raised . . . as a defense in the original action" but were not and the Michigan state court thus did not analyze the defense on its merits). Michigan's claim-preclusion test plainly contemplates situations in which the first court does not have the opportunity explicitly to analyze a particular claim on its merits. *See Adair*, 680 N.W.2d at 396 (stating that res judicata bars "every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not"). Under the first element of the

claim-preclusion test we consider only whether there was a final decision on the merits, not whether the substance of the claim was addressed.

Even if the plaintiffs were correct that the state court was required to assess their defenses on the merits to satisfy this element of claim preclusion, the state court's oral decision and judgment make clear that it rejected their defenses on their merits. *See* R. 19-5 (State Court Mot. Hr'g Tr. at 40–41, 45) (Page ID #263–64, 268) (stating that the court must find that "the defenses are so clearly untenable as a matter of law" to grant judgment in favor of Hanover Township and then concluding that "the defendants have really not presented any tenable defense"); R. 19-2 (State Court J. at 2) (Page ID #134) (granting Hanover Township's motion for summary disposition because there was "no valid defense" and "no issue of material fact"). Therefore, there was a determination on the merits in the State-Court Action.

## 2. Privity

Next, the district court correctly found that both actions involved the same parties or their privies. Levy Machining, Hanover Township, and Sherilene Levy were parties to both cases. Therefore, the parties dispute only whether Heath is in privity with Hanover Township and whether Robert Levy and Ryan Levy are in privity with Levy Machining. "To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Adair*, 680 N.W.2d at 396. "[A] perfect identity of the parties is not required, only a 'substantial identity of interests' that are adequately presented and protected by the first litigant." *Id.* at 397.

Here, Heath is in privity with Hanover Township because he was in an employer-employee relationship with Hanover Township, the claims and defenses arose out of his actions as an

employee, and he and Hanover Township both intended to enforce the ordinance in the same way. *See Bates v. Township of Van Buren*, 459 F.3d 731, 736 (6th Cir. 2006) (finding the parties were in privity because both parties "sought a facial invalidation of the ordinance" and the parties had an employer-employee relationship); *McCoy v. Michigan*, 369 F. App'x 646, 650 (6th Cir. 2010) (finding the parties were in privity "when the previous governmental-unit Defendant . . . and the present-case [individually named defendants] ha[d] an employer-employee relationship").

Likewise, Robert Levy and Ryan Levy are in privity with Levy Machining because they were co-owners of Levy Machining at the time of the State-Court Action and they now seek to assert the same legal rights that Levy Machining asserted as defenses in the State-Court Action. *See Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 358–59 (Mich. Ct. App. 2003) (finding privity because the plaintiff in the second case was the owner of the company that was a plaintiff in the first case and both suits related to the company's rights and liabilities); *see also Washington v. Sinai Hosp. of Greater Detroit*, 733 N.W.2d 755, 757–58, 760–61 (Mich. 2007) (finding that the first personal representative of an estate was in privity with the second representative of an estate because both were asserting the estate's rights). Therefore, both actions involve the same parties or their privies.

### 3. Resolution of the Second Matter during the First Matter

Finally, the district court was correct in determining that the current claims were or could have been resolved in the State-Court Action. Claim preclusion "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 680 N.W.2d at 396. "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined

pragmatically, by considering whether the facts are related in time, space, origin or motivation, [and] whether they form a convenient trial unit." *Id.* at 398 (quoting 46 AM. JUR. 2D *Judgments* § 533) (emphasis omitted). The plaintiffs do not contest that the claims in their federal complaint arise out of the same transaction as the State-Court Action. Appellant Br. at 16–19. Instead, the plaintiffs argue only that they could not have successfully brought counterclaims during the State-Court Action because, at that time, damages were not ascertainable. *Id.*

A second action is not precluded by the first if there are new or continuing wrongs that occur after judgment was entered in the first action. *See Jones v. Westminster, LLC*, No. 334447, 2018 WL 2370634, at \*5–6 (Mich. Ct. App. May 24, 2018) (per curiam) (citing Restatement (Second) Judgments §§ 24, 26(1)(e) (1982)). "[A] plaintiff may only bring a second suit when the defendant continues in his or her tortious *act*, but not where the plaintiff experiences 'continual harmful effects from an original, completed act.'" *Id.* at \*6 (quoting *Terlecki v. Stewart*, 754 N.W.2d 899, 908 (Mich. Ct. App. 2008)); *see also Frank v. Linkner*, 894 N.W.2d 574, 586 (Mich. 2017) (stating that a "claim accrues at the time the wrong upon which the claim is based was done" (quoting MICH COMP. LAWS § 600.5827)). Because the plaintiffs do not argue that any wrongful conduct occurred after the judgment was entered in the first matter[2]—and the complaint similarly

---

[2]Although the plaintiffs mention in passing that there were "continuing violations of federal law," and "new conflicts" of interest, that occurred after the judgment in the state-court proceedings, Appellant Br. at 13, 19, they fail fully to develop the argument and, therefore, it is forfeited. *See United States v. Reed*, 167 F.3d 984, 993 (6th Cir. 1999) (stating that the "settled appellate rule" is "that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" are forfeited (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))). Moreover, the argument lacks merit because there are no allegations in the complaint to support the plaintiffs' assertion that there were "new conflicts" and "continuing violations of federal law." Appellant Br. at 13, 19.

does not include any such allegations—there is no continuing wrong that would allow for a subsequent suit.

Moreover, applying res judicata in this case does not, as the plaintiffs suggest, lead to the perverse outcome evident in *Sherrell v. Bugaski*, 425 N.W.2d 707 (Mich. Ct. App. 1988). In *Sherrell*, the plaintiff was denied damages in her first action and then prevented by res judicata from bringing a second action based on an injury that did not manifest until after the first action was complete. *Id.* at 709.[3] Here, even if the plaintiffs are correct and their damages were not sufficiently ascertainable during the State-Court Action, they could have requested equitable injunctive relief, as they did in the federal complaint, *see* R. 1 (Compl. at 16 ¶ B) (Page ID #16) (requesting equitable relief in the form of "[a]n injunction prohibiting any further acts of wrongdoing, discrimination, or retaliation"), or the plaintiffs could have more fully developed the evidentiary record in support of their defense before the state court. Had the plaintiffs done so and had the state court agreed with them on the merits, there would be no state-court order forcing the plaintiffs to move Levy Machining. In other words, there would be no additional damages that became ascertainable only after the state-court proceedings because any additional harm would have been prevented. Indeed, this is the precise efficiency that claim preclusion—and res judicata more broadly—is meant to encourage. *See Taylor*, 553 U.S. at 892 ("By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,'" res judicata "protect[s] against 'the expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions.'"

---

[3]Notably, the Michigan Court of Appeals affirmed the application of res judicata in those circumstances, which directly contradicts the plaintiffs' argument that their continuing damages prevents application of res judicata. *Sherrell*, 425 N.W.2d at 709.

(quoting *Montana*, 440 U.S. at 153–54)).[4]  Therefore, the district court properly found that the plaintiffs could have resolved the federal claims during the State-Court Action and thus, res judicata bars Counts One, Two, Three, Four, Five, and Eight.

## C.  Supplemental Jurisdiction

Finally, the plaintiffs argue that the district court abused its discretion by declining supplemental jurisdiction over the state-law claims because the district court improperly found that claim preclusion applied to the other claims.  Appellant Br. at 19–20.  Because we affirm the district court's application of claim preclusion and the plaintiffs do not argue that the district court erred in declining to exercise supplemental jurisdiction under these circumstances, there is no occasion to address the plaintiffs' argument on this point.

## III.  CONCLUSION

The district court properly found that Counts One, Two, Three, Four, Five, and Eight were barred by res judicata and properly declined supplemental jurisdiction over the remaining state-law claims.  We therefore **AFFIRM** the judgment of the district court.

---

[4]Likewise, the plaintiffs' reliance on *Ternes Steel Company v. Ladney*, 111 N.W.2d 859 (Mich. 1961), is misplaced.  The portion of *Ternes Steel* that the plaintiffs cite is dicta.  *Id.* at 861 (stating that the portion of the opinion concerning res judicata was "not determinative of this appeal," "not pleaded below," and not "argued to, or considered by the trial judge," but discussing it nonetheless "because of the probability that it will be relied upon by defendant on remand").  Even if it were not dicta, under *Ternes Steel*, if a litigant "does not rely upon his claim as a defense to the first action, or as a counterclaim thereto, he is not barred from subsequently maintaining his action for affirmative relief in an independent suit."  *Id.*  Here, the plaintiffs asserted the selective-enforcement and conflict-of-interest claims as a defense in the first matter, and therefore they cannot now assert these claims, or claims arising from the same transaction, as an independent suit.  *See id.*; *see also AuSable River Trading Post*, 874 F.3d at 274 (finding the third element of the Michigan res judicata test met because "the challenge to the validity of the . . . trademark could have been raised by Agnello as a defense in the original action").